UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANA MARIE KINSTLER, | ) | Case No. 1:18CV0805 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |

Plaintiff Diana Marie Kinstler ("Kinstler" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

I. PROCEDURAL HISTORY

On March 20, 2015, Kinstler protectively filed applications for a period of disability and DIB, and an application for SSI benefits, with both applications alleging disability beginning January 1, 2015. (R. 9, Transcript ("tr."), at 10, 181-184, 197-207.) Kinstler's applications were denied initially and upon reconsideration. (R. 9, tr., at 69-77, 78-87, 88-89, 90-101, 102-113,

114-115, 116-119, 120-122.) Thereafter, she filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 9, tr., at 27-28.)

The ALJ held the hearing on March 22, 2017. (R. 9, tr., at 30-68.) Kinstler appeared at the hearing, was represented by counsel, and testified. (*Id.* at 32, 36-61.) A vocational expert ("VE") attended the hearing and provided testimony. (*Id.* at 32, 61-66.) On July 31, 2017, the ALJ issued the underlying decision, applying the standard five-step sequential analysis to determine whether Kinstler was disabled and concluded Kinstler was not disabled. (R. 9, tr., at 10-22; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).) The Appeals Council denied Kinstler's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (R. 9, tr., at 1-3.)

Kinstler's complaint in this court seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Kinstler asserts the ALJ erred by relying upon erroneous VE testimony regarding skills she acquired from past work, and when finding that Kinstler was capable of performing a significant number of jobs in the national economy. (R. 12, PageID #: 799.)

II. PERSONAL BACKGROUND INFORMATION

Kinstler was born in 1960, and was 54 years old on the alleged disability onset date. (R. 9, tr., at 20, 39, 181.) Accordingly, she was considered an individual of advanced age for Social Security purposes. *See* 20 C.F.R. §§ 404.1563, 416.963. She has a high school education, and is able to communicate in English. (R. 9, tr., at 20, 39, 197, 199.) Kinstler has past work as a hand packager, a tow motor operator, a shipping checker, and a general clerical position. (R. 9, tr., at 62-63.)

III. RELEVANT MEDICAL EVIDENCE AND HEARING TESTIMONY[1]

Disputed issues will be discussed as they arise in Kinstler's brief alleging error by the ALJ. As stated above, Kinstler filed applications for a period of disability and DIB, and an application for SSI benefits on March 20, 2015. (R. 9, tr., at 10, 181-184.) She listed "back problems" as the physical conditions that limited her ability to work. *Id.* at 198.

On initial review, state agency physician Dimitri Teague, M.D., completed a physical residual functional capacity assessment on August 16, 2015. (R. 9, tr., at 74-75.) Dr. Teague opined that Kinstler was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently. *Id.* at 74. The claimant was capable of standing, walking, or sitting for about six hours of an eight-hour workday. *Id.* The doctor opined that the claimant had limited ability to push or pull in both legs, and was limited to frequent use of foot controls due to a history of low back pain. *Id.* at 74-75. The claimant could occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds. *Id.* at 75. She could frequently stoop, balance, kneel, crouch, and occasionally crawl. *Id.* These postural limitations were based on claimant's obesity and spine deficits. *Id.* Dr. Teague found no need for manipulative, visual, communicative or environment restrictions. *Id.*

State agency physician Linda Hall, M.D., completed a physical RFC assessment on reconsideration, on November 21, 2015. (R. 9, tr., at 97-99.)[2] Dr. Hall assessed that the

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

[2] On reconsideration, the record indicates the primary medically determinable impairment ("MDI") was degenerative disc disease of the back, and a secondary MDI of essential hypertension. (R 9, tr., at 96.) Kinstler's other MDIs included other disorders of the

3

claimant was capable of standing, walking, or sitting for about six hours of an eight-hour workday. *Id.* at 98. The doctor opined that the claimant had limited ability to push or pull in both legs, and was limited to frequent use of foot controls due to lumbar degenerative disc disease. *Id.* The claimant could occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds. *Id.* She could frequently balance, and occasionally stoop, kneel, crouch, or crawl. *Id.* Dr. Hall found no need for manipulative, visual, or communicative restrictions. *Id.* at 99. Kinstler needed to avoid all exposure to unprotected heights or moving machinery, and she could do no commercial driving, due to her lumbar degenerative disc disease. *Id.* at 99.

During the hearing, the ALJ asked the VE to characterize claimant's past work. (R. 9, tr., at 62.) The VE responded:

> We have the hand packager under DOT 920.587-018, this is unskilled with an SVP of 2, it's medium per the DOT, light to heavy as performed. The tow motor operator is under DOT 222.687-022, this is unskilled with an SVP of 2 and light per the DOT, up to heavy as performed. General clerical is under DOT 209.562-010, this is semi-skilled with an SVP of 2, it is light per the DOT, sedentary to light as performed. And then lastly, we have shipping checker, DOT 222.687-030, this is semi-skilled with an SVP of 4 and light.

(R. 8, tr., at 62-63.)

The ALJ posed two hypotheticals to the VE. In the first, the ALJ posed an individual with claimant's age, education, and work experience, who can perform the full range of light work, with certain postural limitations. (R. 8, tr., at 63.) The ALJ asked whether such an individual could perform claimant's past work. *Id.* The VE responded that the general clerk, the shipping clerk and hand packager, when it was performed light, would apply. The ALJ asked if

---

gastrointestinal system, hyperlipidemia, ischemic heart disease with or without angina, and "Sprains and Strains – All Types." *Id.*

there would be transferability of clerical skills, and the VE responded that such acquired skills as customer service and sales, operation of office equipment, and knowledge of processes would transfer. *Id.*

In response to the ALJ's question asking what occupations these skills would transfer to, in light of the hypothetical, the VE responded that examples of light jobs with acquired skills that would transfer included:

> . . . file clerk under DOT 206.387-034, this is semi-skilled with an SVP of 3 and light. And, there would be 112,000 positions in the national economy. There would be order filler under DOT 222.487-014, this is semi-skilled with an SVP of 3 and light with an average of 375,000 positions in the national economy.

(R. 8, tr., at 64.)

The second hypothetical question included the same limitations as the first, but reduced to an individual who can perform the full range of sedentary work, instead of light. (R. 8, tr., at 64.) The VE testified that such an individual would not be able to perform the claimant's past work. *Id.* The VE clarified that such an individual would not be able to perform the general clerical position, because it's not purely a sedentary job. *Id.* at 64-65. The transferable skills for the second hypothetical would be the clerical skills, customer service and sales, and data entry. *Id.* at 65. The VE further testified that, in light of the second hypothetical, the jobs that the skills would transfer to would include:

> . . . receptionist under DOT 237.637-038, this is semi-skilled with an SVP of 4 and sedentary. And, to only note those receptionist jobs that would be SVP of 3, I would reduce the numbers from a total of 980,000 in the United States for 250,000. Then, we have order clerk under DOT 249.362-026, this is semi-skilled with an SVP of 4 and sedentary. Again, to reduce the number of jobs that would only require an SVP of 3 and reduce total number of 1.9 million to 385,000. Then, we would have the clerk positions under DOT 205.362-010, this is SVP of 3 and sedentary with an average of 745,000 in the national economy.

5

(R. 8, tr., at 65.)

Counsel for Kinstler first asked the VE to clarify whether certain hypothetical limitations on sitting and walking would affect the VE's responses (not at issue here), and second, whether the transferable skills to sedentary work were similar to her previous work in terms of tools and work processes. (R. 9, tr., at 66. The VE responded yes to the second question. Counsel did not ask any other questions. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her July 31, 2017, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, ischemic heart disease with or without angina, and sprains and strains – all types (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. The claimant can frequently balance; occasionally stoop, kneel, crouch, and crawl. Finally, she should never have exposure to hazards.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on *** 1960, and was 54 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations that exist in significant numbers in the national economy (20 C.F.R. 404.1569, 404.1569(a), 1568(d), 416.969, 416.969(a), and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 9, tr., at 12, 13, 14, 19, 20, 21.)

V. DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII. ANALYSIS

Kinstler presents the following legal issue for the court's review:

> The ALJ found at step five that Ms. Kinstler was capable of performing a significant number of jobs in the national economy. This finding is unsupported by substantial evidence because the ALJ relied upon erroneous vocational testimony to find that Ms. Kinstler acquired skills from past relevant work which would transfer to other occupations.

(R. 12, PageID #: 799.) The claimant, in other words, contends that the ALJ unreasonably relied on VE testimony to find that she acquired skills in her past relevant work that would transfer to a significant number of jobs. *Id.* at 804. Kinstler argues that such a finding is not supported by substantial evidence because the jobs the VE identified were not similar to her past work; and, claimant continues, the identified jobs would require "more than very little vocational adjustment." *Id.* Kinstler contests that her clerical skills were transferable to the occupations identified by the VE. *Id.* at 805. She also asserts that the ALJ failed to resolve a conflict

9

between the VE's testimony and the jobs as described in the Dictionary of Occupational Titles ("DOT"). *Id.* at 804, 807.

Kinstler's failure to raise these issues during the hearing precludes her from now asserting either of them as a basis for relief. *Harris v. Commissioner*, No. 1:11CV1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012). The Sixth Circuit has generally recognized that a claimant's failure to object to testimony offered by a vocational expert at the time of the administrative proceeding waives the claimant's right to raise those issues in the district court. *Harris*, 2012 WL 4434078, at *3 (citing *Hammond v. Chater*, 116 F.3d 1480 (6th Cir.1997) (Table), and other cases); *see also Vagnier v. Commissioner*, No. 2:14CV2376, 2019 WL 396410, at *5 (S.D. Ohio Jan. 31, 2019) (plaintiff cannot object to ALJ's failure to question the VE because counsel failed to follow up with additional questioning at the hearing, citing *Lindsley v. Commissioner*, 560 F.3d 601, 606 (6th Cir. 2009) and *Harris*); *Adams v. Colvin*, No. 1:12CV2338, 2014 WL 185783, at *5 (N.D. Ohio Jan. 16, 2014) (citing *Harris*); *but see Hutchison v. Commissioner*, No. 2:17CV1140, 2018 WL 3386310, at *7-*8 (S.D. Ohio July 12, 2018), adopted without objection by, 2018 WL 4223150 (S.D. Ohio Sept. 5, 2018) (contra).

Kinstler was represented by counsel during the hearing. (R. 9, tr., at 32.) During cross-examination of the VE, counsel never challenged the VE on the question of acquired skills, nor did counsel raise the issue of a purported conflict between the VE's testimony and the DOT. *See generally* R. 9, tr., at 66; *see, e.g.*, *Harris*, 2012 WL 4434078, at *4. While counsel asked whether the VE was testifying that the skills claimant had acquired were very similar to those in her previous work, counsel did not challenge the VE's response that they were. *See generally* R. 9, tr., at 66. Nor did counsel raise the issue during her closing statement. *Id.* at 66-67.

10

Kinstler is thus barred from raising the claims that the VE's identification of acquired skills is not supported by the evidence, or that the ALJ failed to resolve an alleged conflict between the VE's testimony and the jobs as described in the DOT. The second issue cannot be raised for an additional reason as well.

An ALJ can rely on the testimony of a vocational expert identifying specific jobs available in the economy that an individual with the claimant's limitations could perform as substantial evidence supporting an ALJ's finding that the claimant can perform work. *Wilson*, 378 F.3d at 549. An ALJ complies with agency policy by asking whether there is any conflict between the VE's opinions and the DOT requirements for the jobs identified. *Beinlich v. Commissioner*, No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept. 9, 2009) (citing SSR 00-4p, 2000 WL 1898704). The ALJ did so here. (R. 9, PageID #: 62.)

The Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p." *Beinlich*, 2009 WL 2877930, at *4 (citing *Lindsley*, 560 F.3d at 606); *see also Martin v. Commissioner*, No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006) (ALJ does not have duty to conduct independent investigation into VE's testimony); *Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394, at *12-*13 (N.D. Ohio June 8, 2017), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017) (quoting *Beinlich*). Rather, the *Beinlich* court continued: "This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich*, 2009 WL 2877930, at *4 (citing *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)); *Parrish*, 2017 WL 2728394, at *12.

As already established, claimant was represented by counsel during the hearing. (R. 9, tr., at 32.) Counsel did not question the VE on whether there was a conflict between her testimony and the DOT, nor did counsel raise the issue with the ALJ. *Id.* at 66-67. Because Kinstler did not bring the alleged conflict concerning the DOT to the attention of the ALJ,[3] the ALJ did not need to explain how any alleged conflict was resolved. *See, e.g.*, *Beinlich*, 2009 WL 2877930, at *4; *Martin*, 2006 WL 509393, at *5; *Poll v. Berryhill*, No. 3:16CV2061, 2017 WL 3731988, at *8 (N.D. Ohio Aug. 30, 2017).

Even if Kinstler had raised the issue during the hearing, this court would be unlikely to find error in the ALJ's reliance on the VE's testimony. When a VE's testimony conflicts with the information set forth in the DOT, the ALJ has an affirmative duty to ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT." *Lindsley,* 560 F.3d at 603 (citing S.S.R. 00-4p, 2000 WL 1898704, at *4). The ALJ must also "obtain a reasonable explanation for ... apparent conflict[s]" if the VE's evidence "appears to conflict with the DOT." *Id.* Kinstler's argument is that the VE's testimony was in conflict with the DOT because the VE identified two jobs with an SVP of 4, but then testified that she was reducing the number of these jobs to include only those jobs within the category that required an SVP of 3.[4] (R. 12, PageID #: 807, citing R. 9, tr., at 65.) As already discussed, Kinstler did not raise this issue during the hearing.

---

[3] In addition, the claimant bears the burden of proof at Step Four. *Wilson*, 378 F.3d at 548; *Walters*, 127 F.3d at 529.

[4] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *Harrington v. Commissioner*, No. 1:14 CV 1833, 2015 WL 5308245, at *4 n.2 (N.D. Ohio Sept. 10, 2015) (citing Dictionary of

The DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Heffelfinger v. Astrue*, No. 1:10CV2892, 2012 WL 1004722, at *7 (N.D. Ohio Mar. 23, 2012) (quoting SSR 00-4p). SSR 00-4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." *Harrington*, 2015 WL 5308245, at *6; *Heffelfinger*, 2012 WL 1004722, at *7 (quoting SSR 00-4p). In other words, not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the DOT." *Heffelfinger*, 2012 WL 1004722, at *7 (quoting *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir. 1997)).

Here, although the VE testified that the two jobs at issue, receptionist and order clerk, were listed in the DOT as sedentary, with a [maximum] SVP of 4, the VE reduced the number of such jobs available to encompass only those with an SVP of 3. (R. 9, tr., at 65.) Even with the reduction to an SVP of 3, the VE testified that there would be 250,000 such receptionist jobs in the national economy, and 385,000 such order clerk jobs. *Id.* The court does not view this as a "conflict" with (in the sense of contradictory or opposed to) the DOT, but rather a refinement of the occupational numbers of jobs available in the national economy. The VE was implicitly asserting that while the maximum requirements of these two jobs were at SVP 4 (training over 3 months, up to and including 6 months), there was a subset of receptionist and order clerk jobs which only required an SVP 3 (training over 1 month, up to and including 3 months). *See, e.g.*, *Wheeler v. Soc. Sec. Admin.*, No. 4:07CV3284, 2008 WL 4754808, at *15 (D. Neb. Oct. 28,

---

Occupational Titles, Appendix C (4th Ed., Rev.1991)). An SVP 3 is defined as any training over one month, up to and including three months, while an SVP 4 is training over three months, up to and including six months. (DOT, Appx. C, 1991 WL 688702.)

2008) (although receptionist classified as SVP 4, some positions performed at SVP 1 or 2 level); *see generally* Layfield v. Colvin, No. CV 15-358, 2016 WL 4578327, at *7-*8 (D. Del. Sept. 1, 2016), adopted by, 2016 WL 5213902 (D. Del. Sept. 20, 2016) (office manager is ordinarily SVP 7, reduced to SVP 5 here); Oliver v. Colvin, No. CIV.A. 6:14-104-DCR, 2014 WL 6065849, at *3, *7 (E.D. Ky. Nov. 12, 2014) (reducing job numbers for other factors). Although this is an assertion that may be challenged during the hearing, Kinstler did not do so, and cannot do so now. *Beinlich*, 2009 WL 2877930, at *4; *Martin*, 2006 WL 509393, at *5; *Poll*, 2017 WL 3731988, at *8.

VIII. CONCLUSION

The decision of the Commissioner is affirmed. Kinstler's argument that the ALJ erred when relying on the VE's testimony is without merit. The ALJ applied the correct legal standards, and the decision of the ALJ is supported by substantial evidence.

IT IS SO ORDERED.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  September 26, 2019

.